IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD BELL,  3:11-CV-935-BR

        Plaintiff,

                            OPINION AND ORDER

v.

PENSION PLAN FOR BARGAINING
UNIT EMPLOYEES OF TRI-MET,
BETH DEHAMEL, LYNN LEHRBACK,
JANNA TORAN, JOHN HUNT, SAM
SCHWARZ, YVETTE FARRA, and
TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON,

        Defendants.

STEPHEN L. BRISCHETTO
621 S.W. Morrison Street, Suite 1025
Portland, OR 97205
(503) 223-5814

        Attorney for Plaintiff

1 - OPINION AND ORDER

ARUNA A. MASIH
GREGORY A. HARTMAN
Bennett Hartman Morris & Kaplan LLP
210 S.W. Morrison Street, Suite 500
Portland, OR 97204
(503) 227-4600


WILLIAM T. PATTON
Lane Powell, PC
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204-3158
(503) 778-2100

> Attorneys for Defendants Pension Plan for Bargaining
> Unit Employees of Tri-Met, Beth DeHamel, Yvette Farra,
> Jon Hunt, Lynn Lehrback, Sam Schwarz, and Janna Toran

KIMBERLY A. SEWELL
4012 S.E. 17th Avenue, LS3
Portland, OR 97202
(503) 962-5656

> Attorney for Defendant Tri-Metropolitan Transportation
> District of Oregon

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#32) to Dismiss for Failure to State a Claim. For the reasons that follow, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's First Amended Complaint (#31) in its entirety as follows: Plaintiff's First Claim under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (LMRA), is **dismissed with prejudice**; Plaintiff's Second Claim for common-law breach of contract is **dismissed without prejudice**.

2   - OPINION AND ORDER

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint:

Plaintiff Richard Bell is a current employee of Tri-Metropolitan Transportation District of Oregon (Tri-Met) and works in Tri-Met's tire-service department (Tire Shop) on its busses. Plaintiff has worked in the Tire Shop since November 1975, which was originally managed by Firestone pursuant to an agreement between Firestone and Tri-Met. Plaintiff's employment with Firestone was subject to a Collective Bargaining Agreement (CBA) between Plaintiff's Union, Division 757 of the Amalgamated Transit Union, and Firestone that provided for certain pension benefits for employees of the Union.

In 1981 Tri-Met ended its relationship with Firestone and contracted with Goodyear to manage its Tire Shop. Plaintiff's employment with Goodyear was also subject to a CBA between the Union and Goodyear, which provided pension benefits for Tire Shop employees. Plaintiff's benefits with Firestone, however, were not vested at that time, and he lost seven years of service credit with Firestone when he changed employers from Firestone to Goodyear.

In the same month that the Union negotiated its 1982 CBA with Goodyear, Plaintiff alleges the Union also negotiated a CBA with Tri-Met. That CBA and the subsequent CBAs between Tri-Met

3 - OPINION AND ORDER

and the Union in 1985 and 1988 contained the following provision on behalf of the Goodyear employees in the Tire Shop:

> In the event [Tri-Met] discontinues its use of the Goodyear Company as its contractor for tire service, the employees of Goodyear working on [Tri-Met] properties as of April 27, 1982 shall be deemed to have a [Tri-Met] seniority date the same as each employee's most recent date of hire at [Tri-Met] by Goodyear or its predecessor company. They shall be entitled to employment by [Tri-Met] to the extent required by their seniority date and the terms and provisions of the labor agreement.

Plaintiff does not allege the Goodyear-Union CBA contained such a provision. Plaintiff, however, alleges "[t]he promise set forth in the 1982 Agreement between Tri-Met and the [Union] arose from plaintiff's employment under the Agreement between Goodyear and the [Union], were linked to that agreement and became part of the Goodyear-[Union CBA]."

In late 1991 Tri-Met cancelled its contract with Goodyear and assumed management of the Tire Shop and its employees, including Plaintiff. In 1992 Tri-Met and the Union negotiated a new CBA that did not preserve the seniority rules for Tire Shop employees for pension benefits that had been part of the 1982, 1985, and 1988 CBAs. Plaintiff alleges these changes were made without the knowledge or consent of the Tire Shop employees.

In 2007 Plaintiff asked Tri-Met about his seniority date for pension benefits, and Tri-Met advised Plaintiff that his seniority date was 1991.

4 - OPINION AND ORDER

In May 2010 Plaintiff sought pension benefits from Tri-Met and specifically requested pension credits dating back to 1975 for work that he performed for both Firestone and Goodyear. Plaintiff alleges Defendants violated the applicable labor agreements when they concluded Plaintiff's pension-accrual date was in 1991, the date when Plaintiff began to work in the Tire Shop as a Tri-Met employee. Plaintiff also alleges Tri-Met violated its claims procedures during the dispute-resolution process. Ultimately Tri-Met issued its final decision denying Plaintiff's claim on February 14, 2011.

## PROCEDURAL BACKGROUND

Plaintiff filed his original Complaint on August 5, 2011, against Defendants Tri-Met; Pension Plan for Bargaining Unit Employees of Tri-Met (Pension Plan); and Beth DeHamel, Yvette Farra, Jon Hunt, Lynn Lehrback, Sam Schwarz, and Janna Toran,[1] Trustees for the Pension Plan (Trustees). On October 4, 2011, Defendants moved to dismiss Plaintiff's Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, for failure to state a claim under Rule 12(b)(6). On December 5, 2011, Magistrate Judge Janice M. Stewart issued Findings and Recommendation (#17) in which she

---

[1] The Court notes the correct spelling of Defendant Toran's name is "Jana Toran." *See Oregon State Bar Member Directory*.

5  - OPINION AND ORDER

recommended the Court deny Defendants' Motion for lack of jurisdiction but recommended granting the Motion for failure to state a claim.

On January 4, 2012, Plaintiff filed Objections (#23) to the Findings and Recommendation. On March 16, 2012, the Court heard oral argument on the Objections. At the hearing the Court expressed its inclination to adopt the Findings and Recommendation but gave Plaintiff leave to file an amended complaint and Defendants leave to renew their motion against the amended pleading.

On April 9, 2012, Plaintiff filed his First Amended Complaint (#31) in which he asserted two claims: (1) enforcement of promises made as a part of a CBA under § 301 of the LMRA and (2) a common-law claim for breach of contract.

On April 30, 2012, the Pension Plan and Trustees filed their Motion (#32) to Dismiss for Failure to State a Claim and for Failure to Join a Necessary Party under Rules 12(b)(6) and 12(b)(7). That same day Tri-Met filed its Notice (#34) to join the Motion filed by the other Defendants. Plaintiff filed his Response on May 11, 2012, and Defendants filed their Reply on May 23, 2012. Tri-Met again filed a Notice (#38) of Joinder in Defendants' Reply.

On May 31, 2012, the Court heard oral argument on Defendants' Motion.

6 - OPINION AND ORDER

## **STANDARDS**

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). See also *Bell Atlantic v. Twombly*, 550 U.S. 554, 555-56 (2007).

The Supreme Court further clarified in *Iqbal* the requirements for a pleading to survive a motion to dismiss:

> As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

*Id.*, at 557, 127 S. Ct. 1955.

129 S. Ct. at 1949-50.

"[A] complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'" *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010)(quoting *Iqbal*, 129 S. Ct. at 1949 (2009), and *Twombly*, 550 U.S. at 570).

## DISCUSSION

Defendants seek dismissal of Plaintiff's First Amended Complaint in its entirety.

### I.   Plaintiff's LMRA Claim.

Defendants move to dismiss Plaintiff's claim under § 301 of the LMRA in which he seeks to enforce the seniority rules in the Tri-Met-Union CBAs of 1982, 1985, and 1988 on the following grounds:  (1) Plaintiff fails to state a claim on which relief may be granted under Rule 12(b)(6), (2) Plaintiff fails to join necessary parties under Rule 12(b)(7), (3) Plaintiff failed to exhaust his contractual remedies, and (4) Plaintiff's claim is untimely.

Section 301 of the LMRA provides:

> Suits for violation of contracts between **an employer** and a labor organization representing employees in an industry

8  - OPINION AND ORDER

>     affecting commerce as defined in this
>     chapter, or between any such labor
>     organizations, may be brought in any district
>     court of the United States having
>     jurisdiction of the parties, without respect
>     to the amount in controversy or without
>     regard to the citizenship of the parties.

29 U.S.C. § 185(a)(emphasis added).

As they argued in their original Motion to Dismiss, Defendants contend Plaintiff fails to state a claim under § 301 because he is not seeking to enforce a contract between an employer and a labor organization. Specifically, Defendants contend Plaintiff seeks to enforce an agreement between his Union and Tri-Met, which is considered a public body under the statute and is exempted from the definition of an "employer" as a subdivision of the State of Oregon. See 29 U.S.C. § 152(2). Plaintiff does not dispute that Tri-Met is not an "employer" for purposes of the LMRA.

At the March 16, 2012, oral argument on Plaintiff's Objections to the Findings and Recommendation, the Court emphasized the apparent failure of Plaintiff's claim under § 301 and pressed Plaintiff to provide the Court with the specific contract provision "between an employer and a labor organization" that he seeks to enforce. Although Plaintiff's counsel conceded the Tri-Met-Union contract was not actionable under § 301, he instead asserted Plaintiff sought to enforce the CBA between Goodyear, an employer within the meaning under the LMRA, and the

9 - OPINION AND ORDER

Union. Accordingly, Plaintiff argued the Goodyear-Union CBA incorporated the Tri-Met promise to maintain seniority for Goodyear employees in the Tire Shop. Because the Court concluded that theory was not explicit in Plaintiff's Complaint, the Court permitted Plaintiff the opportunity to amend his Complaint to clarify his § 301 claim and to state a claim adequately.

The Court concludes, and the parties agree, Plaintiff cannot, without more, bring an action under § 301 against Tri-Met to enforce a contract between Tri-Met and the Union because Tri-Met is not an employer within the meaning of the statute. Although Plaintiff may have other means to enforce such an agreement between his Union and Tri-Met such as his common-law breach-of-contract claim, he cannot enforce under § 301 the express provision cited in his First Amended Complaint in which Tri-Met allegedly promised to maintain the seniority of Goodyear employees in the event that Tri-Met discontinued its relationship with Goodyear.

Although Plaintiff contends in his Amended Complaint that the asserted promise by Tri-Met in the 1982 Tri-Met-Union CBA was "linked to" and "became part of" the Goodyear-Union CBA, the Court notes Plaintiff neither cites to nor provides any provision of the Goodyear-Union CBA in his Amended Complaint. In his Response to Defendants' Motion, Plaintiff cites to *Garvey v. Roberts* and *Alvares v. Erickson* in which the Ninth Circuit

recognized the term "contract" in § 301 may include documents beyond the CBA itself under certain circumstances. *See Garvey*, 203 F.3d 580, 587 (9th Cir. 2000). *See also Alvares*, 514 F.2d 156, 161-62 (9th Cir. 1975). The Ninth Circuit concluded in *Alvares* and echoed in *Garvey* that a trust agreement specifically referred to, expressly incorporated, and provided as a supplement to the CBA at issue was "part and parcel" of that agreement. 514 F.2d at 161. Thus, the Ninth Circuit concluded the parties intended to include the trust agreement as a part of the CBA despite the fact that it was a separate agreement. *Id.*

Here Plaintiff's assertions in paragraph 16 of his First Amended Complaint that the Tri-Met-Union CBA and the Goodyear-Union CBA were "linked" and that Tri-Met's alleged promise to maintain the seniority of former Goodyear employees in the Tire Shop "became a part of" the Goodyear-Union CBA are "naked" legal conclusions. *See Iqbal*, 129 S. Ct. at 1949-50. Even though Plaintiff vaguely contends the Tri-Met promise to Plaintiff's Union was incorporated into the Goodyear-Union CBA by contract or by some other unidentified operation of law, Plaintiff does not provide any facts such as those discussed by the court in *Alvares* or cite to any provision of the Goodyear-Union CBA to support the plausibility of the pleaded conclusion that the Goodyear-Union CBA expressly referred to or incorporated in whole or in part the Tri-Met-Union CBA.

11 - OPINION AND ORDER

In addition to permitting Plaintiff to replead, the Court gave Plaintiff two opportunities at oral argument to explain the nature of his "incorporation" theory in response to the Court's direct questioning.  Plaintiff, however, merely repeated his reliance on *Alvares* and maintained without explanation that the CBA negotiations in June 1982 were essentially a three-party negotiation between the Union, Tri-Met, and Goodyear.  At the Court's offer of an additional opportunity to replead, Plaintiff's counsel stated he did not wish to replead and was satisfied with the Amended Complaint.

The Court reads Plaintiff's allegations to be sufficient to establish the possibility that the drafters of the Goodyear-Union CBA intended to incorporate the Tri-Met-Union CBA generally or Tri-Met's specific promise to maintain seniority for the Tire Shop employees, but Plaintiff's allegations that the Tri-Met-Union CBA was "linked to" or otherwise incorporated into the Goodyear-Union CBA are no more than legal "labels and conclusions" that lack the sort of "factual enhancement" necessary under *Twombly* and *Iqbal* to constitute "plausible allegations" sufficient to state a § 301 claim for enforcement of the Goodyear-Union CBA.  Ultimately the Court concludes the contract that Plaintiff seeks to enforce is not "between" Goodyear and the Union but is instead a contract "between" Tri-Met and the Union.  Because Tri-Met is not an employer within the

12 - OPINION AND ORDER

meaning of the LMRA, the latter form of contract is not enforceable under § 301. Accordingly, the Court dismisses with prejudice Plaintiff's § 301 LMRA claim.

## II. Plaintiff's Breach-of-Contract Claim.

As noted, Plaintiff also alleges a breach-of-contract claim against Defendants for breach of the Tri-Met-Union CBA. Among other things, Defendants contend in their Motion that if the Court dismisses Plaintiff's § 301 LMRA claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's breach-of-contract claim because the LMRA claim was the sole basis for federal jurisdiction and would no longer be a part of this action.

28 U.S.C. § 1367(a) provides when a district court has original jurisdiction over any civil action, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Nonetheless, 28 U.S.C. § 1367(c)(3) provides the district court has discretion to decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it had original jurisdiction.

District courts may decline to exercise jurisdiction over supplemental state-law claims in the interest of judicial economy, convenience, fairness, and comity. *Mendoza v. Zirkle*

13 - OPINION AND ORDER

*Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002)(citing *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 172-73 (1997)). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008)(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Having now dismissed Plaintiff's § 301 LMRA claim over which the Court had original jurisdiction, the Court also notes this case remains at a very early stage in the proceedings, Defendants have not yet filed an answer, and it does not appear the parties have engaged in any significant discovery. The Court, therefore, concludes the balance of factors in this matter favors declining to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim.

At the hearing on May 31, 2012, Plaintiff requested the Court to dismiss Plaintiff's breach-of-contract claim without prejudice if the Court dismissed Plaintiff's LMRA claim and declined to exercise supplemental jurisdiction over Plaintiff's

14 - OPINION AND ORDER

state-law claim. The Court concludes, in the exercise of its discretion, that Plaintiff should have the opportunity to pursue his state-law claim in state court and, accordingly, dismisses without prejudice Plaintiff's Second Claim for breach of contract.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#32) to Dismiss. The Court **dismisses with prejudice** Plaintiff's First Claim under § 301 of LMRA and **dismisses without prejudice** Plaintiff's Second Claim for common-law breach of contract.

IT IS SO ORDERED.

DATED this 31st day of July, 2012.

_____
ANNA J. BROWN
United States District Judge

15 - OPINION AND ORDER